1 | Daniel J. Yourist, Esq., State Bar No. 180026
      *djy@youristlaw.com*
2 | Bradley J. Yourist, Esq. State Bar No. 180025
      *bjy@youristlaw.com*
3 | **YOURIST LAW CORPORATION, APC**
     11111 Santa Monica Boulevard, Suite 100
4 | Los Angeles, California  90025
     Telephone:  (310) 575-1175
5 | Facsimile: (310) 575-1167

6 | Special Counsel for Trustee,
     Edward M. Wolkowitz, Chapter 7 Trustee

7

8

9 | **UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11

12 | In re                                                          )    Case No.  2:11-bk-40813-VZ
                                                                    )
13 |                                                                )    Chapter 7
     CINEVISION INTERNATIONAL, INC.,          )
14 |                                                                )
                                                                    )
15 |          Debtor.                                         )    **CHAPTER 7 TRUSTEE EDWARD
                                                                    )    M. WOLKOWITZ'S APPLICATION
16 |                                                                )    FOR ORDER TO SHOW CAUSE
                                                                    )    WHY FRANK A. MAYOR AND
17 |                                                                )    CINDY GUNADI SHOULD NOT BE
                                                                    )    HELD IN CONTEMPT FOR
18 |                                                                )    VIOLATION OF THE AUTOMATIC
                                                                    )    STAY AND ORDER THEM TO PAY
19 |                                                                )    COMPENSATORY DAMAGES IN
                                                                    )    THE FORM OF ATTORNEY'S FEES
20 | _____ )    AND COSTS ASSOCIATED WITH
                                                                         PREVAILING IN THE TURNOVER
21 |                                                                     PROCEEDINGS; DECLARATION
                                                                         OF B. YOURIST AND EXHIBITS IN
22 |                                                                     SUPPORT THEREOF**

23 |                                                                     [Request for Judicial Notice separately and
                                                                         filed concurrently herewith]

24

25 |        Cinevision International, Inc., Debtor in the above-captioned case hereby submits

26 | this Application for an Order to Show Cause Why Frank A. Mayor and Cindy Gunadi

27 | Should Not be Held in Contempt for Violation of the Automatic Stay and Ordered to Pay

28 |                                                    1

1   sanctions for contempt of court in the amount of compensatory attorneys fees and costs

2   because of their intentional and calculated breach of the automatic stay and failure to turn

3   over Property belonging to the Bankruptcy Estate.  The Application is supported by the

4   declaration of Bradley J. Yourist and exhibits attached thereto filed concurrently

5   herewith, and the entire record before the Court in this case.

6       The statutory predicates for Debtor's Application are 11 U.S.C. § 105(a) and the

7   Court's inherent civil contempt power to enforce compliance with its lawful judicial

8   orders.  The Court has subject matter jurisdiction over the underlying proceedings

9   pursuant to 28 U.S.C. § 1334(b), which is a core proceeding pursuant to 28 U.S.C. §

10  157(b)(1) and (2)(A) and (2)(E).  The Court has jurisdiction over this Application, which

11  is a contested matter, pursuant to 28 U.S.C. § 157(b) and 1334(b).  This contested matter

12  is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E).  Venue is appropriate in this

13  court.  28 U.S.C. § 1409(a).

14  **I.    Introduction**

15      Debtor's co-owners Cindy Gunadi and Frank Mayor (who was also Debtor's

16  CEO) were proven to have intentionally secreted from the Trustee the Estate's ownership

17  interests in (1) high-value post-production film editing equipment; (2) 10,156 (ten

18  thousand one hundred and fifty six) DVDs that comprised sixteen (16) different movie

19  titles; and (3) a $10,500 (ten thousand five hundred dollar) cash account receivable

20  payment.

21      The Bankruptcy Code requires anyone who has possession of property that belongs

22  to the Estate to turn it over to the Trustee and account for it.  The Debtor is not required to

23  obtain an order to compel turnover.  On April 1, 2014, the Trustee's Special Counsel

24  wrote to both Mayor and Gunadi asking that they turnover the Estate Property that the

25  Trustee knew was being withheld by them both.  The letter was ignored.

26      On April 29, 2014, the Trustee was forced to bring suit against Mayor and Gunadi

27  for turnover.  During the course of the turnover litigation, the Trustee discovered that

28

1   Mayor had stolen $10,500.00 in cash from the Estate.  On March 12, 2015, the Trustee

2   obtained a Judgment against Mayor and Gunadi for turnover of this Estate Property as

3   well as the post-production film equipment and DVDs.  The Trustee was forced to obtain

4   a judgment and incur costs and expenses for turnover against these individuals because of

5   their egregious breach of the automatic stay and unjustified refusal to turnover property

6   which clearly belonged to the Estate.

7       The Court should now impose sanctions for contempt of court in the amount of

8   compensatory attorneys fees because of the intentional and calculated breach of the

9   automatic stay and refusal to turnover estate property which was proven to have been

10  committed by Debtor's co-owners Frank Mayor and Cindy Gunadi.

11  **II.    Statement of Facts**

12  **A.    Automatic Stay and Knowledge of the Automatic Stay.**

13      Cinevision International, Inc. ("Debtor") filed a voluntary petition under Chapter

14  11 of the Bankruptcy Code on July 19, 2011 (the "Bankruptcy Case"). [Request for

15  Judicial Notice ("RJN"), Ex. 1, Findings of Fact and Conclusions of Law, Finding of Fact

16  No. 2] Debtor's Bankruptcy Case was converted from Chapter 11 to Chapter 7 of the

17  Bankruptcy Code. [RJN, Ex. 1, Finding of Fact No. 3]  Pursuant 11 U.S.C. § 701, Edward

18  M. Wolkowitz  became the duly appointed and acting Chapter 7 bankruptcy trustee in the

19  Bankruptcy Case on April 20, 2012. [RJN, Ex. 1, Finding of Fact No. 4]

20      Frank Mayor owned the majority of Debtor's stock and equity. [RJN, Ex. 1

21  Finding of Fact No. 7]  Cindy Gunadi is marred to Frank Mayor and owned a pre-petition

22  interest in Debtor. [RJN, Ex. 1, Finding of Fact Nos. 8 and 9]  From 1982 through 1995,

23  Mayor was an active member of the California Bar who practiced law for his living.

24  [Yourist Declaration, ¶ 1, Ex. 1, Mayor Depo., 12:5-25.]

25      Frank A. Mayor was the Chief Operating Officer of Debtor who directed the

26  preparation and executed the Bankruptcy Case's petition and schedules. [RJN, Ex. 1,

27

28                                      3

1 | Finding of Fact No. 6] Mayor admitted that he reviewed Debtor's Bankruptcy Petition

2 | and verified that all of Debtor's assets had been accurately reflected:

3 |
"Q.   And at the time you verified the bankruptcy petition, did you believe that
        you had disclosed all of the debtors assets of Cinevision International, Inc.?

4 | A.   Yes.

   Q.   And is it your testimony that you turned over all information to regarding
5 |       any assets of Cinevision International, Inc to your lawyer who prepared the
        bankruptcy petition?

6 | A.   Yes.

7 | Q.   Did you make a review of the bankruptcy petition at the time you signed it
        to make sure all of the information you had given your lawyers regarding
8 |       the assets of Cinevision International, Inc had been accurately reflected in
        the petition?

9 | A.   I certainly reviewed the papers, yes."

10 | [Yourist Decl., ¶ 1, Ex. 1, Mayor Depo., 47:6-21]

11 | **B.    Willful Violation of the Automatic Stay.**

12 | On April 1, 2014, Special Counsel for the Chapter 7 Trustee wrote to Mayor and

13 | Gunadi. [Yourist Decl., ¶ 2 and Ex. 2, April 1, 2014 Letter]  Special Counsel advised

14 | them that they were wrongfully withholding property that belonged to the Bankruptcy

15 | Estate which violated the automatic stay and subjected them to contempt of court

16 | sanctions.  The letter specially requested that Mayor and Gunadi turnover the Estate's

17 | post-production film equipment and DVDs.  Mayor and Gunadi ignored the letter.  On

18 | April 29, 2014, the Trustee commenced his adversary proceeding for turnover. [RJN, Ex.

19 | 1, Finding of Fact No. 5]  The Trustee moved for summary judgment and on March 12,

20 | 2015, the Court made its decision issued judgment for turnover.

21 | The Trustee proved that Frank Mayor stole $10,500.00 in cash that Mayor knew

22 | belonged to the Estate. [RJN, Ex. 1, Finding of Fact Nos. 44-48]  Moreover, Mayor

23 | admitted that if there were any receivables owed to Debtor that those receivables would

24 | have to have been turned over to the Trustee and listed on Debtor's schedules:

25 |
"Q.   At the time that Cinevision International, Inc. filed its Chapter 11 petition,
        was there any receivables that MoMedia owed Cinevision?

26 | A     I really don't recall.

   Q.   And if, in fact, they were, would that have been something that you
27 |       would've turned over to your lawyers?

28 |

4

TRUSTEE APPLICATION FOR ORDER TO SHOW CAUSE

A.    Yeah.

Q.    And that would've been something that you would've expected to see reflected in the schedules of the bankruptcy petition; correct?

A.    If they were receivables, yeah."

[Yourist Decl., ¶ 1, Ex. 1, Mayor Depo., 121:16 to 122:2.]

The Trustee also obtained a judgment for turnover of the Estate's post-production film equipment and DVDs.  The Trustee proved that Frank Mayor and Cindy Gunadi failed to turnover property that clearly belonged to Debtor's Bankruptcy Estate. [RJN, Ex. 1, Conclusions of Law No. 6 and Ex. 2, Judgment]  They were ordered to turnover the Estate property as well as the stolen Estate cash. [RJN, Ex. 1 Conclusions of Law Nos. 7-9 and Ex. 2, Judgment]  None of this property was ever listed on the Debtor's bankruptcy schedules. [RJN, Ex. 1, Findings of Fact and Conclusions of Law, Finding of Fact Nos. 21, 28, 35, 41 and 49]

## III.    Legal Discussion

Bankruptcy courts have the power to enter civil contempt orders, and impose civil contempt sanctions.  In the Ninth Circuit, it has long been established that non-individuals, such as the Debtor in this case, who is injured by a stay violation can recover civil contempt sanctions under 11 U.S.C. § 105(a).  *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052,1058 (9th Cir. 2009) [Bankruptcy courts have the power to sanction parties and nonparties for their contemptuous actions.]; see also *Oliner v. Kontrabecki (In re Kontrabecki)*, 305 B.R. 510 (N.D. Cal.2004); *In re Chief Executive Officers Clubs*, 359 B.R. 527, 534 (Bankr. S.D. N.Y 2007).[1]  Bankruptcy courts have authority to enter final orders to address violations of the automatic stay.  *Turner v. First Cmty. Credit Union (In*

---

[1]    Bankruptcy courts may even incarcerate contemnors who fail to pay court-imposed fines or otherwise comply with court order's. *In re Spanish Plaza Realty Co.*, 155 B.R. 249 (Bankr. S. D. Fla. 1993); *In re Duggan*, 133 B.R. 671 (Bankr. D. Mass. 1991); *In re Krisle*, 54 B.R. 330, 338 (Bankr. D.S.D. 1985)(incarceration ordered in civil contempt proceedings where debtor wrongfully withdrew cash collateral from debtor-in-possession account and failed to comply with court order requiring turnover of cash proceeds wrongfully withdrawn).

5

1 | *re Turner),* 462 B.R. 214, 220 (Bankr S.D. Tex 2011) [finding jurisdiction to determine

2 | violations of the automatic stay]

3 |       One who during a bankruptcy proceeding is "in possession, custody, or control" of

4 | property belonging to the debtor's estate "shall deliver to the trustee, and account for,

5 | such property or the value of such property..." Title 11 USC § 542(a).  By its express

6 | terms, Section 542(a) is self-executing and does not require the debtor to take any action

7 | or commence a proceeding or obtain a court order to compel the turnover. See *Mwangi v.*

8 | *Wells Fargo Bank, N.A.* (In re Mwangi), 432 B.R. 812, 823 (9th Cir. BAP 2010).

9 |       "[T]he failure to return property of the estate with knowledge of the bankruptcy is

10 | a violation of both the automatic stay and of the turnover requirements of the Bankruptcy

11 | Code." *Abrams v. Sw. Leasing & Rental, Inc. (In re Abrams),* 127 B.R. 239, 242-43

12 | (B.A.P. 9th Cir. 1991); *see also Mwangi, supra.,* at 822.

13 |       **A.    Civil Contempt: The Court Should hold Mayor and Gunadi in**
14 |             **Contempt for their Proven Failure to Turnover Property of the Estate.**

15 |       Civil  contempt  sanctions  are  available  as a remedy for a  violation of the

16 | automatic stay.  *See  Cal.  Emp't Dev. Dep't v. Taxel (In re Del  Mission Ltd.)* , 98 F.3d

17 | 1147, 1152 (9th Cir.  1996) ; *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir.

18 | 1995).  Under § 105, "[t]he standard for finding a party in civil contempt is well settled:

19 | The moving party has the burden of showing by clear and convincing evidence that the

20 | contemnors violated a specific and definite order of the court." *Knupfer v. Lindblade (In*

21 | *re Dyer)*, 322 F.3d 1178, 1190-91 (9th Cir. 2003) quoting *Renwick v. Bennett (In re*

22 | *Bennett),* 298 F.3d 1059, 1069 (9th Cir.2002).  The movant must prove that the party (1)

23 | knew the automatic stay was applicable; and (2) intended the actions which violated the

24 | injunction.  *Id.*  "Knowledge of the injunction, which is a prerequisite to its willful

25 | violation, cannot be imputed; it must be found." *ZiLOG, Inc. v. Corning (In re ZiLOG,*

26 | *Inc.),* 450 F.3d 996, 1007-08.  The standard for proof is clear and convincing, in other

27 | words, the movant must present "a quantum of proof adequate to demonstrate to a

28 |

6

1    'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d

2    243, 250 (2d. Cir. 2002)(citation omitted).

3        Here, the Trustee met his burden: (1) Mayor and Gunadi knew that their company,

4    the Debtor, had filed for Bankruptcy and that the automatic stay and duty to disclose all

5    estate property applied. Mayor and Gunadi were put on notice to turnover the Estate

6    Property approximately one (1) month before the Trustee filed the action for turnover but

7    did nothing. [Yourist Decl., ¶ 2 and Ex. 2, Yourist Letter]; (2) the turnover requirement

8    was known to both Mayor and Gunadi because they admitted to knowing that they had to

9    turnover to the Trustee all property that belonged Cinevision International, Inc. because

10    of the Bankruptcy filing; and (3) the proof of their violation of the automatic stay is clear

11    and convincing by virtue of the March 12, 2015 Judgment for Turnover. [RJN, Exs. 1 and

12    2]

13        **B.    The Court Should Award the Chapter 7 Trustee his Attorneys' Fees as
              Compensatory Damages for Mayor and Gunadi Civil Contempt.**

14

15        Civil penalties must either be compensatory or designed to coerce compliance.

16    *Dyer, supra.,* 322 F.3d at 1192. Compensatory damages, including attorneys fees, are

17    appropriate sanctions for civil contempt arising from a violation of the automatic stay. *Id.*,

18    1195. Civil contempt sanctions are fashioned to coerce compliance with a court order, or

19    compensate complainant from the losses incident to the contemnor's violation of the

20    Court order. *McMahon & Co. v. Pofolks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000).

21        In this matter, civil penalties in the form of attorneys fees imposed against Mayor

22    and Gunadi are compensatory in nature and "are an appropriate component of a civil

23    contempt award." *Dyer, supra.,* 322 F.3d at 1196. The attorneys fees are fully detailed in

24    this application pursuant to the lodestar method. *Youssef v. Union Adjustment Co. (In re*

25    *Youssef),* 2011 Bankr. LEXIS 886 at 17 n. 5 (B.A.P. 9th Cir. Feb 1, 2011) citing *Jordan v.*

26    *Multnomah County,* 815 F.2d 1258, 1262 (9th Cir. 1987). As part of the Trustee's

27    compensatory damages, the Trustee's counsel have incurred $98,413.75 in attorney fees

28

1  and costs of suit totaling $1,331.49.  The attorneys fees are reasonable and were incurred

2  solely in the effort to remedy the violation of the automatic stay and compel the turnover

3  of Estate property that was withheld by Mayor and Gunadi. See *Abrams, supra,* 127 B.R.

4  at 242-43.

5      A turnover proceeding "is essentially a proceeding for restitution."  Maggio v.

6  Zeitz, 333 U.S. 56, 63, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948).  The Trutsee was

7  compelled to obtain a judgment for turnover of the Estate's monetary and non-monetary

8  property against Mayor and Gunadi.  The turnover judgment was secured at a substantial

9  cost in the form of attorneys fees and litigation costs.  The Turnover litigation should

10  never have been required.  The Estate will not have obtained full restitution in the

11  absence of a finding of contempt and award of attorneys fees and costs that the Trustee

12  was forced to expend to obtain a turnover judgment for something which is "automatic".

13  Thus, the Court should award $99,745.24 in attorneys fees and costs since these are

14  simply compensatory in nature. [Yourist Declaration, ¶ 4 and Ex. 3, Detailed Legal Fee

15  Invoices]

16      **IV.    Conclusion.**

17      On March 12, 2015, the Frank Mayor and Cindy Gunadi were adjudged to have

18  been in possession, custody and control of property that clearly belonged to the

19  Bankruptcy Estate.  The Trustee proved that Mayor stole $10,500.00 in cash that

20  belonged to the Estate.  There was absolutely no justification for the failure to turnover

21  Estate property.  The two individuals wrongfully withheld the non-monetary estate

22  property allowing it to suffer a substantial decrease in value over the past several years in

23  complete violation of the automatic stay and turnover requirements.  They knew they had

24  possession of property that belonged to the Estate because they were put on notice prior to

25  the time the Chapter 7 Trustee filed his turnover action.  Mayor and Gunadi forced the

26  Trustee to obtain a judgment for turnover.  This simply never had to have happened.

27

28                                         8

1    For the foregoing reasons and based on the evidence in this matter, the Court

2    should enter an order holding Mayor and Gunadi in contempt of court for their knowing

3    violation of the automatic stay and turnover obligations and award contempt sanctions in

4    the amount of $99,745.24 in attorneys fees and costs against Mayor and Gunadi jointly

5    and severally.

6    WHEREFORE, based upon the above, the Trustee respectfully requests that this

7    Court grant the Application and:

8    1.    Issue an Order to Show Cause Why Frank Mayor and Cindy Gunadi Should

9          Not Be Held in Contempt for Violation of the Automatic Stay and Failure to

10         Turnover Estate Property; and

11   2.    Enter an Order awarding contempt sanctions to the Trustee in the amount of

12         $99,745.24 for attorneys fees and costs against Mayor and Gunadi jointly

13         and severally.

14

15   DATED: May 15, 2015                    YOURIST LAW CORPORATION

16

17                              By:    _____

18                                     BRADLEY J. YOURIST
                                       DANIEL J. YOURIST
19                                     Special Counsel for Edward M. Wolkowitz,
                                       Chapter 7 Trustee

20

21

22

23

24

25

26

27

28
                                        9

## DECLARATION OF BRADLEY J. YOURIST

I, Bradley J. Yourist, declare:

I am an attorney at law duly licensed to practice before all the courts of the State of California and am a Shareholder at the law firm of Yourist Law Corporation, and special counsel for Plaintiff Edward M. Wolkowitz, Chapter 7 Trustee. I have personal knowledge of all the matters set forth herein and, if called as a witness, I could and would competently testify thereto.

1. Attached to my declaration as Exhibit 1 is a true and correct copy of the relevant pages from Frank A. Mayor's Deposition.

2. Attached to my declaration as Exhibit 2 is a true and correct copy of the letter that I wrote on April 1, 2014 to both Frank Mayor and Cindy Gunadi asking them to turnover property of the Bankruptcy Estate that we learned they had in their possession but had refused to produce it to the Trustee. I specifically advised them both that they needed to turnover the property or may be subjected to contempt sanctions. They ignored my letter.

3. During the course turnover litigation, I discovered that Frank Mayor had stolen $10,500.00 in cash that was property of the Debtor's Bankruptcy Estate. The Court granted partial summary adjudication and issued judgment for turnover on March 12, 2015.

4. Attached to my declaration as Exhibit 3 is my attorney fee bill that I have kept contemporaneously throughout the entire matter of proving that Frank Mayor and Cindy Gunadi had hidden assets that belonged to the estate and stolen cash as well. The total amount of time that I was forced to spend on behalf of the Trustee litigating the turnover action was 202.47 hours. I became a member of the California Bar in 1995 and have extensive experience litigating in Federal and State Court. My hourly rate for this work is $495.00 per hour. My total attorneys fees were $98,413.75. My firm also spent

10

$1,331.49 in costs which also includes the deposition costs of deposing Mr. Mayor.  The total amount of attorneys fees and costs were $99,745.24.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration is executed this 15th day of May, 2015 at Los Angeles, California.

_____

BRADLEY J. YOURIST

EXHIBIT 1

12

# In the Matter of:

## Edward M. Wolkowitz vs. Cinevision Global Inc.

Frank A. Mayor

09/29/2014

Job #: 42493



COURT REPORTERS, INC.

(818)988-1900

1           UNITED STATES BANKRUPTCY COURT

2   CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

3

4                          )
   IN RE:                  )

5                          )
   CINEVISION INTERNATIONAL, INC.)

6                          )
                         )

7             DEBTOR(S).    )
   _____)

8    EDWARD M. WOLKOWITZ, CHAPTER  )
   7 TRUSTEE OF CINEVISION     )

9    INTERNATIONAL, INC., A      )
   CALIFORNIA CORPORATION,     )

10                          )
           PLAINTIFFS,    )

11                          )
   vs.                 )  CASE NO.

12                          )  2:11-bk-40813-TD
                         )

13    CINEVISION GLOBAL, INC., A   )  ADV NO.
   CALIFORNIA CORPORATION; FRANK )  2:14-ap-01257-TD

14    A. MAYOR AKA FRANK ALFRED    )
   RIESEN AKA FRANK A. MAYER, AN )

15    INDIVIDUAL; CINDY THERESIA    )
   GUNADI, AN INDIVIDUAL; AND    )

16    DOES 1 THROUGH 25 INCLUSIVE,  )
                          )

17                          )
          DEFENDANTS.   )

18    _____)

19

20            DEPOSITION OF FRANK A. MAYOR

21            MONDAY, SEPTEMBER 29, 2014

22

23

24    FILE NO:  42493

25    REPORTER: JESSICA N. NAVARRO, C.S.R. NO. 13512

Page 10

1  any substance that may affect your ability to
2  understand questions and/or relate things?
3      A   No.
4      Q   At any time if you want to take a break,
5  please let me know and I'll be happy to do that.
6  Do you understand?
7      A   Yes.
8      Q   Your counsel may interject objections.
9  That's for the record.  We're in federal court, so
10 we can't do speaking objections.  It's merely
11 stating the grounds.
12     If at all possible, please try to keep my
13 question in mind when your counsel is making her
14 objection and then answer it.  Will you do that?
15     A   Yes.
16     Q   The only time that you are not supposed to
17 answer a question is when your counsel specifically
18 instructs you not to answer a question, and then you
19 can choose whether or not you're going to follow
20 your counsel's instructions.  Do you understand
21 that?
22     A   Yes.
23     Q   Before we go forward -- I'm sorry.  I'm
24 entitled to your best recollection no matter how
25 vague that is.  Do understand it?

Page 11

1      A   Yes.
2      Q   However, you're perfectly free to
3  characterize your recollection as vague or almost
4  nonexistent.  Do you understand that?
5      A   Yep.
6      Q   The one thing that we do not want you to
7  do is guess.  So do not speculate on an answer.  If
8  you don't know it, simply say "I don't know."  Will
9  you do that?
10     A   Yes.
11     Q   In a similar manner, just like "I don't
12 know" is a perfectly acceptable answer, saying "I
13 don't remember" is also a perfectly acceptable
14 answer.  Do you understand that?
15     A   Yes.
16     Q   However, what you may find is that many
17 times as people go through this process and we start
18 talking about things that happened in the past, they
19 may start remembering things that they may not have
20 remembered earlier on during the depo proceeding.
21     If that happens, please let me know that
22 you have remembered something and I'll be happy to
23 go back to what the prior subject matter was and we
24 can explore what your newfound recollection was.
25 Will you do that for me?

Page 12

1      A   Yes.
2      Q   And, once again, at any time you want to
3  take a break, let me know.  Will you do that?
4      A   Yes.
5      Q   All right.  When were you admitted as a
6  California lawyer?
7      A   I believe it was 1982.
8      Q   And at some point in time, did you cease
9  being a California lawyer?
10     A   That's correct.
11     Q   And when was that?
12     A   I'm not sure exactly.  I believe it was
13 possibly 1991.
14     Q   Does 1995 ring a bell?
15     A   Yeah.
16     Q   Do you think it was 1995 as opposed to
17 1991?
18     A   You know, I actively -- I was not really
19 actively practicing for a number of years, so it
20 might have been '95 that I officially resigned.  I
21 don't remember.
22     Q   Briefly describe for me what your practice
23 areas were while you were a practicing lawyer in the
24 State of California.
25     A   I did immigration, some entertainment,

Page 13

1  some general practice.
2      Q   Can you describe for me in more detail on
3  what the entertainment law was that you did?
4      A   I did some music contracts.  I was also in
5  music management for a while.
6      Q   Anything besides music contracts?
7      A   A few film contracts.
8      Q   I'm sorry.  What contracts?
9      A   A few film contracts.
10     Q   Thank you.  Prior to becoming a lawyer,
11 had you ever worked in the entertainment industry?
12     A   No.
13     Q   And can you describe for me more detail on
14 what your general practice was?
15     A   It was just general business law for my
16 existing clients.
17     Q   And when you say "general business law,"
18 can you give me a little more description of that?
19     A   Business disputes, contracts, review, that
20 sort of thing, establishing corporations.
21     Q   Would you draft contracts for your clients
22 as part of your general practice?
23     A   On occasion.
24     Q   Over the time that you were a practicing
25 lawyer, how many contracts would you estimate that

Page 46

1  Q   Does this document now refresh your
2  recollection about the earlier questions I was
3  asking about, whether or not there was any formal
4  action taken by Cinevision International, Inc. and
5  by the equity members of the corporation to
6  authorize the filing for bankruptcy?
7  A   Well, I believe this was actually drafted
8  by our attorneys. It has their name on there,
9  Fredman, Knupfer, Lieberman. So it was probably a
10  form that they drafted and looks like my wife signed
11  off on it.
12  Q   And on July 19th, 2011 was Cindy Gunadi
13  the secretary of Cinevision?
14  A   I believe so, yes.
15  Q   And was there a corporate resolution --
16  strike that.
17      Was there a meeting that created this
18  document that we've identified as page 86 of
19  Exhibit 1?
20  A   You know, there was an informal meeting.
21  The attorneys may have told us we need to formalize
22  it. That's probably what happened.
23  Q   At the time you signed off on the
24  bankruptcy petition before your lawyers filed it,
25  did you think that the information contained in the

Page 47

1  bankruptcy petition was full and complete?
2  A   As far as I know. I mean, I gave all the
3  information to my lawyers and they prepared the
4  documents and I reviewed and, as best as I could
5  tell, everything was pretty accurate.
6  Q   And at the time you verified the
7  bankruptcy petition, did you believe that you had
8  disclosed all of the debtor assets of Cinevision
9  International, Inc.?
10  A   Yes.
11  Q   And is it your testimony that you turned
12  over all information regarding any assets of
13  Cinevision International, Inc. to your lawyer who
14  prepared the bankruptcy petition?
15  A   Yes.
16  Q   Did you make a review of the bankruptcy
17  petition at the time you signed it to make sure all
18  of the information you had given your lawyers
19  regarding the assets of Cinevision International,
20  Inc. had been accurately reflected in the petition?
21  A   I certainly reviewed the papers, yes.
22  Q   Okay. But my question is, did you recall
23  making a detailed review of the papers to make sure
24  that your lawyers had accurately listed all the
25  assets of Cinevision International, Inc. that you

Page 48

1  had turned over to them?
2  A   What do you mean by a "detailed review"?
3  Q   Sure. Did you look at the information
4  that was contained in the petition and did you
5  ensure that the information that you claim you gave
6  your lawyers regarding the assets of Cinevision
7  International, Inc. was reflected in an accurate
8  manner in the bankruptcy petition that was
9  ultimately filed?
10  A   Well, I went over in detail all the papers
11  we submitted to the attorneys. I certainly reviewed
12  the filings. I don't know how -- I mean, I didn't
13  spend hours and hours pouring over the documents.
14      I had already given the information to the
15  attorneys, so I kind of assumed they put things
16  together. I reviewed everything and it looked all
17  correct to me and I signed off on it.
18  Q   And prior to the filing of the bankruptcy
19  petition for Cinevision International, Inc., had you
20  ever had any experience in bankruptcy practice when
21  you were a practicing attorney?
22  A   No.
23  Q   Prior to be becoming a practicing
24  attorney, did you have any experience in bankruptcy
25  practive either as a law clerk or any other

Page 49

1  occupational setting?
2  A   No.
3  Q   Prior to the filing of the bankruptcy
4  petition for Cinevision International, Inc., had you
5  had any experience in any capacity with the filing
6  of a bankruptcy, whether it was for a corporation or
7  for a person?
8  A   I don't believe so, no.
9  Q   Sitting here today, on your best
10  recollection, then, Cinevision International, Inc.
11  was the first time that you had ever been involved
12  in the preparation of filing a bankruptcy petition?
13  A   For a corporation, certainly.
14  Q   Prior -- strike that.
15      To the best of your recollection today,
16  prior to the filing of the petition or Cinevision
17  International, Inc., had you ever been involved in
18  the filing of a personal bankruptcy petition?
19  A   I may have -- I believe I filed a personal
20  bankruptcy. I'm not sure if I actually filed it or
21  prepared it for myself. At one point I had
22  considered going bankrupt, but that was a long time
23  ago.
24  Q   2000s, 1990s, 1980s?
25  A   Maybe about 1994.

16

Page 118

1  paperwork was stolen by Krashna as well.
2      Q    Was all the paperwork stolen or just some
3  of it?
4      A    Most of it.
5      Q    And you filed a police report about this
6  alleged theft?
7      A    Yes.
8      Q    And so the police report identified --
9  strike that.  Were you the person who personally
10 filed the police report?
11     A    Yes.
12     Q    And you spoke with the investigating
13 officers?
14     A    Yes.
15     Q    Was the police report filed at the station
16 or was a detective sent out to wherever the crime
17 scene was?
18     A    I believe it was filed at the station and
19 the detective may have come out to the premises.
20     Q    And were you the only individual from
21 Cinevision International, Inc. that the
22 investigating officer spoke to?
23     A    Yes.
24     Q    Did you ever see a police report as a
25 result of the investigating officer's work?

Page 119

1      A    I don't recall.  I think I may have.
2      Q    Did anyone ever contact you to take your
3  statement regarding the alleged thefts?
4      A    I made a statement at the station.
5      Q    Other than the statement at the station,
6  were you contacted by any other investigators who
7  took any type of recorded statement from you?
8      A    No.
9      Q    And the investigating officer interviewed
10 you when he came out; correct?
11     A    I'm not sure if it was at the station.  I
12 don't recall if he actually came out or not.  I know
13 I went to the station.
14     Q    And were you -- strike that.
15          Do you know if your complaint was ever
16 referred by the investigating officer to the
17 district attorney's office for further prosecution
18 or investigation?
19     A    I believe it was.
20     Q    And do you have any knowledge as to the
21 outcome of the referral by the investigating officer
22 to a prosecuting authority?
23     A    I believe they declined prosecution
24 because Mr. Krashna was also an officer of the
25 corporation.

Page 120

1      Q    And, as far as you know, did that close
2  the criminal aspect of that?
3      A    As far as I know.
4      Q    When Cinevision International, Inc. was
5  sued partially as a result of Mr. Krashna's
6  activity, was a Cross-Complaint filed by Cinevision
7  International against Mr. Krashna for indemnity?
8      A    Which case are you talking about?
9      Q    The one that went to trial and that there
10 was an adverse judgment against Mr. Krashna and
11 Cinevision International, Inc.
12     A    I don't believe so.
13     Q    Was there ever any civil attempt made to
14 recover the computer and/or the documents that you
15 alleged were stolen?
16     A    No.
17     Q    And why was that?
18     A    Because I don't know where Mr. Krashna is.
19     Q    Did Mr. Krashna show up for the civil
20 trial in which he was found to be civilly at fault?
21     A    Yes.
22     Q    And during the time that he was at that
23 trial, was there any attempt made to serve him with
24 any type of legal action to recover any of the
25 documents or computers that you claim were stolen?

Page 121

1      A    He didn't steal that until after, that was
2  much later.  He was still part of Cinevision at that
3  time.
4      Q    So how long was it after the adverse
5  judgment came down against Mr. Krashna and
6  Cinevision that he left?
7      A    Well, he -- it was sometime after he also
8  stole about $180,000, checks that he took from E1
9  and deposited it into a separate account, and when I
10 found out about it, unfortunately, I was rather far
11 away and by the time I had got to the office, he
12 already absconded with a number of items.
13     Q    And was this within a year of the adverse
14 judgment coming down on Cinevision and Mr. Krashna?
15     A    I think so.
16     Q    At the time that Cinevision International,
17 Inc. filed its Chapter 11 petition, was there any
18 receivables that MoMedia owed Cinevision?
19     A    I really don't recall.
20     Q    And if, in fact, they were, would that
21 have been something that you would've turned over to
22 your lawyers?
23     A    Yeah.
24     Q    And that would've been something that you
25 would've expected to see reflected in the schedules

Page 122

1  of the bankruptcy petition; correct?
2      A   If they were receivables, yeah.
3      Q   Okay.  I'd like to direct your attention,
4  if I could, to page 265 of Exhibit 6, and please
5  take a look at that and once you've looked at it,
6  let me know.
7      A   Page 265?
8      Q   Yes, page 265 of Exhibit 6.
9          MR. YOURIST:  Bates stamping, the Bates
10 stamps.
11         THE WITNESS:  Yes.
12 BY MR. NANGANO:
13     Q   All right.  Looking at this document, does
14 this reflesh -- strike that.
15         Looking at this document, does this
16 refresh your recollection as to MoMedia making any
17 payments to Cinevision, Inc.?
18     A   Looks like it was a payment to Cinevision
19 Global.
20     Q   Okay.  If you look at the amounts sent on
21 the top and the "In Favor Of" where it says,
22 Cinevision Int., Inc.
23     A   Right.
24     Q   Does that indicate to you that, in fact,
25 the payment is being sent to Cinevision

Page 123

1  International, Inc.?
2      A   I'm not really sure.  This was apparently
3  a payment for some of the film titles.
4      Q   And it occurred on October 19th, 2012;
5  correct?
6      A   I'm not really sure.  I'm not sure where
7  this came from, so  ..  That's what it indicates,
8  but I'm not really sure.
9      Q   All right.  However, on October 22nd, if
10 you look at the bottom, there's an email from you to
11 a Nikki Hillebrand --
12     A   Right.
13     Q   -- and a Lucas Bertrand.  Do you see that?
14     A   Uh-huh.
15     Q   And the subject is Cinevision Global
16 payment.  Do you see that?
17     A   Yes.
18     Q   And what is Cinevision Global?
19     A   Cinevision Global is a company formed to
20 basically be a distribution for the film library.
21     Q   And who is Nikki Hillebrand?
22     A   I think she was the accountant for
23 MoMedia.
24     Q   And who is Lucas Bertrand?
25     A   He was my contact at MoMedia.

Page 124

1      Q   All right.  And in this email you first
2  indicate that the transfer has not taken place.  Do
3  you see that?
4      A   Yes.
5      Q   All right.  So at sometime around October
6  22nd, 2012 there was a representation made by
7  MoMedia that they were, "I'm going to make a payment
8  to you"?
9      A   Correct.
10     Q   And you indicate,
11         "I note that you're referring to
12 Cinevision International as the company, but,
13 as you know, the company is now known as
14 Cinevision Global, Inc."
15     Do you see that?
16     A   Yes.
17     Q   And at the time you made that
18 representation, was that a true and accurate
19 statement as far as you were concerned?
20     A   I believe so, yes.
21     Q   Do you have any recollection as to what it
22 was that MoMedia owed Cinevision International and
23 then subsequently Cinevision Global $10,500 for?
24     A   I don't think they owed Cinevision
25 International anything.  I think they were

Page 125

1  originally -- usually when I do film deals, I have
2  a distribution component and possibly delivery
3  component.
4          And I believe Cinevision was paid to do
5  the post-production on the delivery materials and
6  that's probably why they had the name as the
7  beneficiary, but the payments that these are
8  referring to are obviously for the film -- the films
9  themselves, which would not go to Cinevision.
10     Q   Then why is it that in your October 22nd,
11 2012 email you didn't tell them that they had the
12 wrong company?  You simply said that the company is
13 now known as Cinevision Global, Inc.
14     A   That's because that's what the company was
15 operating as at that point.  I think this was after
16 the Chapter 7 had been finalized, if I don't -- if I
17 recall correctly.
18         Cinevision Global is a completely --
19 Cinevision Global was formed before Cinevision
20 International even filed for bankruptcy.  It was set
21 up just to be a distribution branch to distinguish
22 it from Cinevision International, just a
23 distribution branch for the films.
24     Q   And who are the owners of Cinevision
25 global, Inc.?

EXHIBIT 2

19



**Yourist** Law
Corporation, APC

11111 SANTA MONICA BOULEVARD, SUITE 100
LOS ANGELES, CALIFORNIA 90025-3378
TEL: 310-575-1175  FAX: 310-575-1167

April 1, 2014

<u>**VIA U.S. MAIL**</u>
Frank A. Mayor
Cindy Theresia Gunadi
424 Bamboo Lane
Los Angeles, California 90012

Frank A. Mayor, CEO
Cinevision Global, Inc.
424 Bamboo Lane
Los Angeles, California 90012

Re:       <u>IN RE: CINEVISION INTERNATIONAL, INC.</u>
          CASE NO.: 2:11-BK-40813-TD

Subject:   **DEMAND TO TURNOVER ESTATE ASSETS PRE-ADVERSARY**

Dear Mr. Mayor and Mrs. Gunadi:

        This firm is special counsel for Mr. Edward M. Wolkowitz, the duly appointed Chapter 7 trustee in the above referenced Chapter 7 bankruptcy case.

        We have been retained to initiate an adversary complaint against you for turnover of the estate's post-production video equipment and DVDs (collectively "Estate Assets") you control and  possess at 424 Bamboo Lane, Los Angeles, California 90012 (see attached Exhibit "1").

        Please be advised that wrongfully withholding Estate Assets from the trustee violates the automatic stay which may subject you to contempt of court sanctions which include payment of our attorney's fees and costs associated in prosecuting the adversary proceeding to recover property that belongs to the Estate.

        If you fail to make the necessary arrangements with us to turnover the Estate Assets to the Trustee by end of business April 21, 2014, we will have no choice but to file an Adversary Complaint against you both.  Please contact me to make arrangements to turnover property belonging to the Estate,

                    Best regards,

                    Bradley J. Yourist

                    20

## Exhibit "1"

### List of Estate's Post-Production Video Equipment and DVDs Re: Turnover

- JVC24" Multi-Format LCD Reference Monitor-Built-in;
- Sony DVW-M2000 Multiformat Digital Betacam VTR;
- NEC LCD-2690WUXI-BKSV 26" Wildscreen Flat-Panel;
- Sharp LC42D72U 42" 1080p LCD Display;
- LaCie d2 External Blu-ray Drive - Firewire & USB 2.0;
- Microboards Copywriter DVD 316 Premium PRO 3-Bay; Tower-3 @ 16x/48x Plextor Recorders, 1 reader, HDD, LCD;
- Panasonic Blu-ray Internal Drive - 2x BD-R/RE, 8x DVD-/+R;
- AJA Kona Lhe PCI-Express Card;
- AJA KLBox-LH breakout box for Kona Lse/LH/Lhe;
- ISIS Group Innovation 8x8 HD/SDI Video Router - 1RU;
- AJA HDP HD-SDI/SDI to DVI-D Converter w/internal scaling;
- Brainstorm DCD-8 WC Distripalyzer;
- Brainstorm VSG-4 Video Sync Gen. Option Card for DCD-8;
- Sigma VDA-2602x3 Dual 1x3 Video for Wideband Video;
- Digidesign Magma PE6R4 6-slot PCI-x Expansion Chassis;
- MAC Pro 2.66QX5X5127300GT\nS;
- ATI RadeonX1900XTGraphics U;
- MAC Pro;
- SATA-750GB3.5"7200RPM;
- Apple Cinema HD Display 20";
- Apple Cinema HD Display 30";
- Black Star Oxford 924 Chip Set;
- 160GB72002.5 SEAGATE;
- SATA-750GB3.5"7200RPM;
- 750GB,7200RPM,HDD;
- Card Airport Extreme;
- Stylus Pro3800 Pro 17in wide;
- 2.5 SATA Enclosure;
- Platinum Raid Pro no drives E744432;
- CFI JB4043A020 PC-E Raid Exp;
- MicroNet Platinum FW/USB2 Raid E744434;
- Eye-One Photo SG UV Cut (from Chromax);
- Platinum Raid Canister PATA;
- X-Proof MAC (Up to 17") (from Chromax);
- Two 2.8GHz Quad-Core Intel Xeon 2GB (2x1GB) None 320GB 7200-rpm Serial ATA 3Gb/S NVIDIA GeForce 8800 GT 512MB One 16x SuperDrive;
- 2GB 800GHz for Mac Pro;
- SATA 1TB;
- APP FOR MAC PRO/PMAC-E/K-USA;
- IMAC 2.8GHz Intel Core 2 Duo 24inch 4 GB 800MHz DDR2 SDRAM - 2x2 GB ATI Radeon HD 2600 PRO w/256MB GDDR3 1TB Serial ATA Drive;
- Apple Cinema HD Display 30";
- Apple Cinema HD Display 23";
- Apple Mac Pro 3.0Ghz 8 Core;
- Apple Mac Pro 2.8Ghz 8 Core;
- Apple IMAC 2.8Ghz Core 2 Duo;
- Steelcase Leap chair in Black Leather/Graphite Frame;
- Genelec 5.1 SE DSP Monitor System Special Order (SN: 7261APM);
- Smart-Ups 3000 VA RM 2U 120V Line-Int L5-30P 8OUT;
- Gefen DVI KVM Ext-DVI-441DLP (PARRALLEL);
- Custon 104" Bridge Edit Desk/Nevamar Cognac Birdseye;
- vStor, 4U, 24TB raw, RAID 5, quad GE ports, dual cx4 10GE ports;

- Uplink switch dual 10GE cx4, 24 GE ports (Foundry switch); 10GE NIC PCI-e for Mac Client;
- Maya Complete 2008 Gold Bundle Standalone A-C0624;
- Dell Workstation;
- Soniccare-Cinevision MPEG-2 Encoder;
- Digital Vision DVO Video Processing;
- Cinevision Encoder (MPEG-2);
- Soniccare-Scenarist BD Edition;
- Scenarist BD Edition;
- Gefen 50' Dual Link DVI cable w/USB Ethernet Extender;
- 2 GB 800 GHZ for Mac Pro;
- 2 Apogee(s) AD16x;
- JVC-DT-V241DU;
- Dual-Link HD/HD/SD 10-Bit Capture and Output PCIe Card;
- Break Out box for AJA Kona 3;
- Black Magic Workgroup Video Hub HD Link Pro Converter;
- HD Link Pro Converter;
- Final Cut Studio 2 Upgrade from Final Cut Studio;
- Pro Tools HD3 Core System;
- Sonnet E2P Sata Host Bus Adapter Card;
- lcd arm for new apple monitors;
  Panasonic TH-50PF10UK 50" Plasma Display 50IN Plasma HD 10K:1 1920x1080 TH=50PF10UK
  BLK Ser/HD15/BNC CMPNT 50" - 16:9 - 1920x1080;
- Waves 360 TDM Toolkit;
- Gefen DVI DL Booster Plus;
- Gefen Ext-DVI KVM 444DL Dual Link Matrix;
- S5MC: MC Joystick, MC408, MC408, Sonicwall router, CM409-3 Blank Panel, USB Relay Box;
- Cinema Craft Xtream-Presto Fully Integrated Encoding Computer System;
- CIN-1002 Cinevision Studio Encoder (Avc);
- CIN-1003 Cinevision Studio Encoder (Vc-1);
- DIN-HD Master Audio Suite;
- Ccx-p Cinema Craft Xtream-presto Fully Integraded Encoding Computer System;

- 60 Boxes of Blu-Rays and DVDs ready for sale with titles such as 'Welcome To The Terrordome', 'The Truth feat Snoop Dogg', 'Tribal- Beyond The Four Walls', and 'Attack Force Z– BluRay'.

EXHIBIT 3

*23*

# YOURIST LAW CORPORATION

11111 SANTA MONICA BLVD.
SUITE 100
LOS ANGELES, CA  90025

Invoice submitted to:
EDWARD M. WOLKOWITZ
CHAPTER 7 BANKRUPTCY TRUSTEE
LEVENE, NEALE, BENDER, YOO & BRILL
800 S. FIGUEROA STREET, SUITE 1260
LOS ANGELES, CA 90017

May 14, 2015

In Reference To:IN RE CINEVISION INTERNATIONAL, INC / MAYOR & GUNADI
TURNOVER ACTION

Invoice #1997

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 3/12/2014 | BJY | Review<br>REVIEW AND ANALYZE 341A MEETING OF CREDITORS AUDIO<br>TAPES FROM BOTH HEARINGS TO ANALYZE THE ORAL<br>TESTIMONY OF FRANK A. MAYOR. | 2.80<br>495.00/hr | 1,386.00 |
| 4/1/2014 | BJY | Draft<br>DRAFT CORRESPONDENCE TO FRANK A. MAYOR AND CINDY<br>GUNADI REQUESTING TURNOVER OF PROPERTY OF THE<br>CINEVISION INTERNATIONAL BANKRUPTCY ESTATE AND<br>ADVISE THEM ON CONTEMPT ISSUES FOR THEIR REFUSAL. | 0.90<br>495.00/hr | 445.50 |
| 4/2/2014 | BJY | Research<br>CONDUCT LEGAL RESEARCH REGARDING STATUTE OF<br>LIMITATIONS ON 548, 549 CLAIMS. | 2.83<br>495.00/hr | 1,402.50 |
| 4/20/2014 | BJY | Preparation of pleadings<br>DRAFT ADVERSARY COMPLAINT FOR TURNOVER; FORMAT<br>EXHIBITS AND COMPILE DOCUMENT FOR TRUSTEE'S REVIEW;<br>PREPARE AND DRAFT TWO EMAILS TO MS. JARAMILLO<br>REQUESTING DEBTOR'S TAX RETURNS AND MORS; REVIEW<br>AND ANALZYE DEBTORS PROFIT AND LOSS STATEMENTS AND<br>MORS TO DETERMINE; PREPARE AND DRAFT EMAIL TO<br>TRUSTEE ATTACHING COMPLAINT. | 4.33<br>495.00/hr | 2,145.00 |
| 4/28/2014 | BJY | Legal Research<br>CONDUCT LEGAL RESEARCH REGARDING TRUSTEE'S RIGHT<br>TO ATTORNEYS FEES AND COSTS; CIVIL CONTEMPT AND<br>VIOLATION OF THE AUTOMATIC STAY FOR FAILURE TO<br>TURNOVER ESTATE PROPERTY (11 USC 105, 362); FINALIZE | 2.50<br>495.00/hr | 1,237.50 |

EDWARD M. WOLKOWITZ

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| | | TURNOVER COMPLAINT; PREPARE AND DRAFT ADVERSARY COVER SHEET AND SUMMONS AND NOTICE OF STATUS CONFERENCE; ORGANIZE EXHIBITS | | |
| 5/1/2014 | BJY | Preparation of pleadings<br>REVIEW AND ANALYZE ISSUED SUMMONS AND NOTICE OF STATUS CONFERENCE; PREPARE AND DRAFT PROOFS OF SERVCE WITH ATTACHEMENT REGARDING SUMMONS & NOTICE OF STATUS CONFERENCE AND ADVERSARY COMPLAINT WITH COVER SHEET; PREPARE CHAMBERS COPY | 1.83<br>495.00/hr | 907.50 |
| 5/9/2014 | BJY | Draft<br>PREPARE AND DRAFT ENCLOSURE LETTER TO DEFENDANT CINDY GUNADI PROVIDING A COURTESY COPY OF THE ADVERSARY COMPLAINT TO HER HOME ADDRESS | 0.20<br>495.00/hr | 99.00 |
| 5/28/2014 | BJY | Review<br>REVIEW AND ANALYZE ANSWER TO COMPLAINT.  PERFORM LEGAL RESEARCH AND ANALYSIS ON WHETHER COUNSEL FOR CINEVISION CAN BE DISQUALIFIED FOR VIOLATING CALIFORNIA RULES OF PROFESSIONAL CONDUCT.  BEGIN LEGAL RESEARCH AND ANALYSIS ON FRCP RULE 8(b) FOR FAILURE OF DEFENDANTS TO ANSWER COMPLAINT PURSUANT TO THE RULE 8. | 1.90<br>495.00/hr | 940.50 |
| 6/19/2014 | BJY | Draft<br>REVIEW LISTING OF BAMBOO LANE; PREPARE AND DRAFT MEET AND CONFER LETTER TO CINDY GUNADI REQUESTING EARLY MEETING, SITE INSPECTION AND FREEZE; PREPARE AND DRAFT LETTER TO TRUSTEE | 1.60<br>495.00/hr | 792.00 |
| 6/23/2014 | BJY | Review<br>REVIEW AND ANALYZE CINDY GUNADI'S MEET AND CONFER LETTER; FORWARD SAME TO CLIENT FOR HIS REVIEW; | 0.60<br>495.00/hr | 297.00 |
| 6/25/2014 | BJY | Preparation<br>REVIEW AND ANALYZE IMAGE ENTERTAINMENT AGREEMENT WITH CINEVISION; REVIEW AND ANALYZE EMAIL FROM JON KRASHNA REGARDING MAYOR. | 495.00/hr | NO CHARGE |
| | BJY | Draft<br>MEET AND CONFER TO PREPARE JOINT STATUS REPORT AND RULE 26 MEETING TO ARRANGE TURNOVER OF DOCUMENTS, LEASES; PREPARE AND DRAFT LETTER TO GUNADI REGARDING | 2.60<br>495.00/hr | 1,287.00 |

EDWARD M. WOLKOWITZ                                                          Page    3

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
|  |  | SITE INSPECTION AND THREATS; PREPARE AND DRAFT EMAIL TO TRUSTEE |  |  |
| 6/26/2014 | BJY | Preparation of pleadings PREPARE AND DRAFT JOINT STATUS REPORT; FILE, SERVE CHAMBERS COPY; PREPARE AND DRAFT NOTICE OF SUBPOENA; PREPARE AND DRAFT SUBPOENA TO INSPECT PREMISES WITH PROOF OF SERVICE THEREON | 2.60 495.00/hr | 1,287.00 |
| 7/1/2014 | BJY | Preparation of pleadings PREPARE AND DRAFT 5 SUBPOENAS WITH NOTICES OF SUBPOENAS WITH PROOF OF SERVICE THEREON TO DEBTORS' FORMER LEASING COMPANIES TO VERIFY LEASE TYPE AND OWNERSHIP OF EQUIPMENT | 3.80 495.00/hr | 1,881.00 |
| 7/8/2014 | BJY | Draft REVIEW AND ANALYZE LETTER FROM CINDY GUNADI PROVIDING NEW INSPECTION DATES; DISCUSS LETTER WITH DANIEL J. YOURIST; PREPARE AND DRAFT RESPONSIVE LETTER TO GUNADI; PREPARE AND DRAFT EMAIL TO TRUSTEE ATTACHING DRAFT OF LETTER | 2.60 495.00/hr | 1,287.00 |
| 7/9/2014 | BJY | Draft FINALIZE LETTER TO GUNADI CONFIRMING INSPECTION DATES; MEET TO FINALIZE AND REVIEW SUBPOENAS AND ATTACHMENTS TO LEASING COMPANIES OF DEBTOR | 1.80 495.00/hr | 891.00 |
|  | BJY | Draft REVIEW AND ANALYZE EMAIL FROM TRUSTEE REGARDING JULY 8, 2014 LETTER FROM GUNADI; FORWARD SAME TO TRUSTEE. | 0.60 495.00/hr | 297.00 |
| 7/10/2014 | BJY | Court Appearance ATTEND STATUS CONFERENCE WITH JUDGE DOVOVAN AT ROYBAL BUILDING; PREPARE AND DRAFT RESPONSIVE EMAIL TO TRUSTEE WOLKOWITZ REGARDING REFERRAL | 2.80 495.00/hr | 1,386.00 |
|  | BJY | Preparation of pleadings PREPARE AND DRAFT ATTACHMENT TO SUBPOENAS FOR LEASE AGREEMENTS | 2.10 495.00/hr | 1,039.50 |

EDWARD M. WOLKOWITZ                                                        Page     4

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/11/2014 | BJY | **Review**<br>REVIEW AND ANALYZE TRUSTEE'S EMAIL TO DARE LAW REGARDING CRIMINAL REFERRAL; PREPARE AND DRAFT 10 NOTICES OF SUBPOENA; PREPEARE AND DRAFT 10 SUBPOENAS WITH RPOOF OF SERVICE; DRAFT 10 EXHIBIT A WITH COVER LETTERS; PREPARE STATUS EMAIL FOR TRUSTEE'S SYSTEM; PREPARE AND DRAFT SCHEDULING ORDER PER COURT ORDER OF JULY 10, 2014; TELEPHONE CALL WITH WITNESS | 4.80<br>495.00/hr | 2,376.00 |
| 7/14/2014 | BJY | **Telephone Call**<br>TELEPHONE CALL FROM JOSIE LASKY OF QUAIL CAPITAL CONFIRMING THAT THE CINEVISION LEASE AGREEMENT WERE SOLD OFF AND THEY HAVE NO DOCUMENTS TO PRODUCE IN THEIR POSSESSION; PREPARE AND DRAFT EMAIL TO ADAM TROY TO CONFIRM THAT WE HAVE ENOUGH COVERAGE ON THE SUBPOENAS TO IRWIN, ENTERPRISE FUNDING AND POPULAR EQUIPMENT; REVIEW AND ANALYZE CINEVISIONS INCORPORATION DOCS; BY LAWS; STATEMENTS TO SEC OF STATE; CFO APPOINTMENT; LEASE AGREEMENT; BOARD DEMANDS; AND MINUTES | 4.10<br>495.00/hr | 2,029.50 |
| 7/15/2014 | BJY | **Preparation of pleadings**<br>PREPARE NOTICES OF SUBPOENA AND SUBPOENAS TO ALL LEASING COMPANIES OF DEBTOR FOR THE DEBTOR'S LEASE AGREEMENTS. | 1.00<br>125.00/hr | 125.00 |
| 7/23/2014 | BJY | **Preparation**<br>PREPARE AND DRAFT FIRST SET OF REQUESTS FOR ADMISSIONS TO EACH DEFENDANT. | 3.00<br>495.00/hr | 1,485.00 |
| 8/5/2014 | BJY | **Draft**<br>PREPARE REQUESTS FOR ADMISSIONS TO MAYOR AND GUNADI (OVER 1000); PREPARE AND DRAFT LETTER TO DEFENDANT GUNADI TO CONDUCT SITE INSPECTION OF EQUIPMENT | 5.83<br>495.00/hr | 2,887.50 |
| 8/6/2014 | BJY | **Meeting**<br>REVIEW DEBTOR'S EQUIPMENT LIST AND MEET WITH ADAM TROY TO DISCUSS SITE INSPECTION OF DEBTOR'S ASSETS (FILM EDITING & PRODUCTION RELATED EQUIPMENT) AND RELATED STRATEGY; TRAVEL TO AND FROM 424 BAMBOO LANE, LOS ANGELES, CA 90012 TO MEET WITH FRANK MAYOR TO VIEW EQUIPMENT AND DVDS | 4.30<br>495.00/hr | 2,128.50 |

EDWARD M. WOLKOWITZ                                                          Page    5

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/6/2014 BJY | Review | REVIEW AND ANALYZE RESPONSE FROM IRWIN FINANCIAL DOCUMENT/LEASE SUBPOENA (ASSIGNED FROM QUAIL CAPITAL); DISCUSS WITH ADAM TROY | 0.80 495.00/hr | 396.00 |
| 8/13/2014 BJY | Telephone Call | TELEPHONE CALL FROM PATTI A. BRUNDIGE REGARDING EST. VALUATION OF THE EQUIPMENT AND REQUEST THAT WE PREPARE A CONFIRMING EMAIL REGARDING  ESTIMATED VALUATION OF THE ESTATE ASSETS; TELEPHONE CALL TO POTENTIAL EXPERT TO VALUE EQUIPMENT AT THE TIME OF THE FILING OF THE ORIGINAL CHAPTER 11 PETITION AND SCHEDULES | 0.80 495.00/hr | 396.00 |
| 8/14/2014 BJY | Draft | PREPARE AND DRAFT RESPONSIVE EMAIL TO KEVIN SCOTT APPRAISER REGARDING THE ESTATES EQUIPMENT IN ORDER TO VALUE IN JULY 2011 (DATE OF PETITION); TELEPHONE CALL TO KEVIN SCOTT REGARDING THE LEASES AND DATES OF ORIGINAL ACQUISITION; PREPARE AND DRAFT A DEMAND LETTER TO CINDY GUNADI AND FRANK MAYOR ABOUT THE VOLUNTARY TURN-OVER OF THE DVDS IN THEIR POSSESSION | 2.60 495.00/hr | 1,287.00 |
| 8/15/2014 BJY | Review | REVIEW AND ANALYZE PHOTOS AND VIDEOS TAKEN DURING SITE INSPECTION; PREPARE AND DRAFT THREE PAGE TURN-OVER DEMAND LETTER TO DEFENDANT FRANK MAYOR AND HIS COUNSEL CINDY GUNADI; PREPARE AND DRAFT EMAIL FORWARDING A COPY TO THE TRUSTEE AND THE US TRUSTEE'S OFFICE AND THEIR COUNSEL | 2.50 495.00/hr | 1,237.50 |
| 8/20/2014 BJY | Review | REVIEW AND ANALYZE FRANK MAYOR AND CINDY GUNADI'S RESPONSES TO OUR DEMAND FOR PRODUCTION OF DOCUMENTS; TELEPHONE CALL TO POTENTIAL APPRAISER EXPERT BTI APPRAISAL TO DISCUSS COSTS AND PROCEDURE TO VALUE THE ESTATE'S VIDEO PRODUCTION EQUIPMENT; REVISE REQUESTS FOR ADMISSIONS TO MAYOR AND GUNADI TO ADD LEASES; TELEPHONE CALL TO JODI OSTER OF HUNTINGTON BANK REGARDING WHEN CAN THE TRUSTEE EXPECT TO RECEIVE THE DOCUMENTS PER OUR SUBPOENA | 4.10 495.00/hr | 2,029.50 |
| 8/22/2014 BJY | Draft | PREPARE AND DRAFT EMAIL TO APPRAISER WITH EXPLANATION AND EQUIPMENT LIST TO OBTAIN QUOTE FOR AN EQUIPMENT APPRAISAL; REVIEW AND ANALYZE BEN TIMELL | 0.30 495.00/hr | 148.50 |

EDWARD M. WOLKOWITZ

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| | | OF BSI APPRAISAL EMAIL AND PREPARE A SHORT RESPONSE | | |
| 8/26/2014 | BJY | Review<br>REVIEW AND ANALYZE RESPONSES TO PLAINTIFF WOLKOWITZ'S DEMAND FOR PRODUCTION OF DOCUMENTS TO BOTH DEFENDANTS FRANK MAYOR AND CINDY GUNADI AND RELATED DOCUMENT PRODUCTION; PREPARE AND MEET AND CONFER LETTER REGARDING MISSING DOCUMENTS AND FOLLOW-UP ON DEMAND FOR VOLUNTARY TURNOVER OF THE DVDS; REVIEW AND ANALYZE TWO EMAIL FROM PROSPECTIVE APPRAISERS; PREPARE AND DRAFT EMAIL TO PLAINTIFF WOLKOWITZ REGARDING HIS THOUGHTS ON THE ESTATE ENGAGING AN APRAISER TO VALUE THE ESTATES POST PRODUCTION EQUIPMENT | 2.80<br>495.00/hr | 1,386.00 |
| 9/5/2014 | BJY | Preparation of pleadings<br>PREPARE AND DRAFT NOTICE OF DEPOSITIONS FOR DEFENDANTS CINDY GUNADI, AND FRANK MAYOR; PREAPRE AND DRAFT NOTICE OF SUBPOENA AND SUBPOENA TO FURTHER INSPECT DVDS AT BAMBOO LANE; | 2.10<br>495.00/hr | 1,039.50 |
| 9/11/2014 | BJY | Review<br>REVIEW NOTICE OF ADVANCEMENT OF STATUS CONFERENCE. | 0.10<br>125.00/hr | 12.50 |
| 9/24/2014 | BJY | Preparation<br>PREPARE AND DRAFT DEPOSITION OUTLINES FOR THE DEPOSITIONS OF DEFENDANTS CINDY GUNADI AND FRANK MAYOR | 4.00<br>495.00/hr | 1,980.00 |
| 9/25/2014 | BJY | Preparation<br>ORGANIZE DEPOSITION EXHIBITS FOR UPCOMING DEPOSITIONS OF DEFENDANTS FRANK MAYOR AND CINDY GUNADI | 1.50<br>495.00/hr | NO CHARGE |
| 10/6/2014 | BJY | Review<br>REVIEW AND ANALYZE CORRESPONDENCE FROM CINDY GUNADI REGARDING SUPPLEMENTAL LEASES AND LETTER DEMANDING DISMISSAL | 1.80<br>495.00/hr | 891.00 |
| 10/8/2014 | BJY | Review<br>REVIEW AND ANALYZE EMAIL FROM GENERAL COUNSEL AT E1 ENTERTAINMENT LARRY SAPADIN REGARDING OUR SUBPOENA; PREPARE AND DRAFT RESPONSIVE EMAIL | 0.30<br>495.00/hr | 148.50 |

EDWARD M. WOLKOWITZ                                                                    Page    7

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
|  |  | CORRESPONDENCE. |  |  |
| 10/8/2014 | BJY | Review<br>PREPARE AND DRAFT NOTICE OF ADVANCEMENT OF STATUS CONFERENCE WITH PROOF OF SERVICE | 0.60<br>495.00/hr | 297.00 |
| 10/10/2014 | BJY | Letter to client<br>PREPARE AND DRAFT UPDATE FOR TRUSTEE TO BE INPUTTED IN INTERNAL SYSTEM; PREPARE AND DRAFT EMAIL TO TRUSTEE WOLKOWITZ REGARDING MOMEDIA EMAIL ANALYSIS; PREPARE AND DRAFT EMAIL TO LARRY SAPADIN, GC OF EONE ENTERTAINMENT REGARDING MR. MAYOR'S RECEIPT OF ESTATE'S DVDS; BEGIN REVIEWING UNDISPUTED FACTS FOR PLANNED MOTION FOR SUMMARY JUDGMENT | 2.00<br>495.00/hr | 990.00 |
| 10/13/2014 | BJY | Draft<br>PREPARE AND DRAFT FOUR PAGE MEET & CONFER LETTER TO DEFENDANT CINDY GUNADI REGARDING : TURNOVER OF THE DVDS, AMENDING SCHEDULE B, ECT.; PREPARE AND DRAFT ATTACHMENT EMAIL TO GUNADI, | 2.80<br>495.00/hr | 1,386.00 |
| 10/14/2014 | BJY | Preparation of pleadings<br>PREPARE AND DRAFT JOINT STATUS REPORT FOR HEARING NOVEMBER 12, 2014; FORWARD DRAFT TO OPPOSING COUNSEL AND DEFENDANT IN PRO SE CINDY GUNADI FOR HER APPROVEL/OR FURTHER REVISION; PREPARE COVER LETTER TO CINDY GUNADI ENCLOSING JOINT STATUS REPORT | 1.30<br>495.00/hr | 643.50 |
|  | BJY | Letter to client<br>REVIEW AND ANALYZE CORRESPONDENCE AND EMAILS FROM TRUSTEE WOLKOWITZ TO E1 WITH ATTACHMENTS FROM TRUSTEE TO CINEVISION REGARDING DVDS;  PREPARE AND DRAFT LETTER TO E1'S GENERAL COUNSEL LARRY SAPADIN FURTHER REQUESTING WHY THE DVDS WERE SHIPPED TO FRANK MAYOR POSTPETITION; TELEPHONE CALL WITH JON KRASHNA FORMER SECRETARY AND VP OF DEBTOR TO DISCUSS THE LOGISTICS OF THE E1 DISTRIBUTION DEAL AND THE POTENTIAL CHARGE-BACKS AND OFF-SETS OF THE COSTS OF THE DVDS; PREPARE AND DRAFT LETTER TO CINDY GUNADI REQUESTING ANOTHER INSPECTION DATE; TELEPHONE CALL TO CINDY GUNADI REGARDING HER RETURN OF THE SIGNATURE PAGE FOR THE JOINT STATUS REPORT FOR JUDGE DONOVAN'S REVIEW. | 3.10<br>495.00/hr | 1,534.50 |

EDWARD M. WOLKOWITZ                                                                    Page      8

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 10/27/2014 BJY | Preparation<br>PREPARE AND DRAFT JOINT STATUS REPORT FOR UPCOMING<br>HEARING. | | 1.00<br>495.00/hr | 495.00 |
| 10/30/2014 BJY | File Review<br>REVIEW AND ANALYZE FRANK MAYOR 165 PAGE DEPOSITION<br>TRANSCRIPT; PARSE OUT SECTION PER TRUSTEE'S REQUEST<br>RELEVANT TO FRANK MAYOR'S ADVICE OF COUNSEL DEFENSE | | 4.30<br>495.00/hr | 2,128.50 |
| 11/7/2014 BJY | Review<br>REVIEW AND ANALYZE EONE'S ACTUAL DOCUMENT<br>PRODUCTION RESULTING FROM TRUSTEE'S SUBPOENA TO<br>EONE ENTERTAINMENT TO ASCERTAIN AND CONFIRM THE<br>ESTATE'S OWNERSHIP OF THE DVDS THAT ARE SUBJECT TO<br>THE ADVERSARY PROCEEDING; PREPARE AND DRAFT AN<br>EMAIL TO TRUSTEE WOLKOWITZ OUTLINING THE SUBSTANCE<br>OF THE EONE ACTUAL DOCUMENT PRODUCTION AND IT'S<br>POTENTIAL LEGAL EFFECT VIA MOTION FOR SUMMARY<br>JUDGMENT; BEGIN VALUATION OF DVDS; TELEPHONE CALL TO<br>INTERESTED PARTIES | | 4.30<br>495.00/hr | 2,128.50 |
| 11/12/2014 BJY | Court Appearance<br>TRAVEL TO AND FROM US BANKRUPTCY COURT TO ATTEND<br>STATUS CONFERENCE. | | 3.80<br>495.00/hr | 1,881.00 |
| BJY | Preparation of pleadings<br>PREPARE AND DRAFT SCHEDULING ORDER WITH PROOF OF<br>SERVICE PURSUANT TO THE COURT'S ORDER FOR 2/18/2015 AT<br>10AM COURTROOM 1345, HON. THOMAS B. DONOVAN<br>PRESIDING; TELEPHONE CALL TO CINDY GUNADI TO DISCUSS<br>FAX TRANSMISSION ISSUE | | 1.30<br>495.00/hr | 643.50 |
| 12/4/2014 BJY | Draft<br>PREPARE AND DRAFT CORRESPONDENCE TO EONE<br>ENTERTAINMENT'S COUNSEL TO OBTAIN A CUSTODIAN OF<br>RECORDS DECLARATION; PREPARE AND DRAFT EXEMPLAR<br>FOR EONE ENTERTAINMENT'S COUNSEL AND FORWARD SAME. | | 0.80<br>495.00/hr | 396.00 |
| 12/23/2014 BJY | Preparation of pleadings<br>BEGIN PREPARATION AND ORGANIZATION OF EXHIBITS FOR<br>MOTION FOR SUMMARY JUDGMENT; REVIEW AND ANALYZE<br>DEPOSITION TRANSCRIPT OF DEFENDANT FRANK MAYOR AND<br>EXHIBITS IN PREPARATION OF SEPARATE STATEMENT OF<br>FACTS; START TO PREPARE AND DRAFT SEPARATE<br>STATEMENT OF FACTS FOR MOTION FOR SUMMARY | | 7.80<br>495.00/hr | 3,861.00 |

EDWARD M. WOLKOWITZ                                                              Page      9

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
|  |  | JUDGMENT; TELEPHONE CALL TO WITNESSES IN ANTICIPATION OF DECLARATION PREPARATION |  |  |
| 1/5/2015 | BJY | Draft<br>CONTINUE DRAFTING SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. | 4.80<br>495.00/hr | 2,376.00 |
| 1/6/2015 | BJY | Draft<br>REVIEW AND ANALYZE DEBTOR'S PROFIT & LOSSES TO ASCERTAIN THE NUMBER OF PAYMENTS MADE BY DEBTOR FOR THE THREE CAPITAL LEASE AGREEMENTS; PREPARE AND DRAFT DECLARATION OF BRADLEY J. YOURIST | 4.80<br>495.00/hr | 2,376.00 |
|  | BJY | Draft<br>CONTINUE DRAFTING SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOCUSING ON FRANK MAYOR'S THEFT OF THE ESTATE'S POST-PRODUCTION FILM EDITING EQUIPMENT. | 4.60<br>495.00/hr | 2,277.00 |
| 1/8/2015 | BJY | Preparation of pleadings<br>PREPARE AND DRAFT THE DECLARATION OF TRUSTEE E. WOLKOWITZ, ESQ. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; PREPARE AND DRAFT EMAIL TO TRUSTEE REGARDING  SAME AND FACTS AND CIRCUMSTANCES; FINALIZE DECLARATION OF BRADLEY J. YOURIST AND EMAIL TO TRUSTEE E. WOLKOWITZ; PREPARE ALL EXHIBITS. | 6.00<br>495.00/hr | 2,970.00 |
|  | BJY | Draft<br>CONTINUE DRAFTING SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOCUSING ON FRANK MAYOR'S THEFT OF THE ESTATE'S DVDS. | 3.30<br>495.00/hr | 1,633.50 |
| 1/9/2015 | BJY | Draft<br>CONTINUE DRAFTING SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOCUSING ON FRANK MAYOR'S THEFT OF THE ESTATE'S MOMEDIA ACCOUNT RECEIVABLE. | 2.30<br>495.00/hr | 1,138.50 |
| 1/11/2015 | BJY | Draft<br>DRAFT NOTICE OF MOTION, OR ALTERNATIVELY FOR SUMMARY ADJUDICATION OF ISSUES.  BEGIN DRAFTING MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF | 4.30<br>495.00/hr | 2,128.50 |

EDWARD M. WOLKOWITZ                                                                     Page    10

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| | | MOTION FOR SUMMARY JUDGMENT. | | |
| 1/12/2015 | BJY | Draft<br>CONTINUE DRAFTING MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.  REVISE SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW. | 7.90<br>495.00/hr | 3,910.50 |
| | BJY | Preparation of pleadings<br>FINALIZE SEPARATE STATEMENT OF UNDISPUTED FACTS; PREPARE CONCLUSIONS OF LAW; FINALIZE DECLARATION OF BRADLEY J.YOURIST AND ORGANIZE EXHIBITS | 5.00<br>495.00/hr | 2,475.00 |
| 1/13/2015 | AT | Preparation of pleadings<br>PREPARE CHAMBER'S COPY OF MOTION, SEPARATE STATEMENT OF UNDISPUTED FACTS, DECLARATION WITH EXHIBITS TABS; PREPARE AND DRAFT NOTICE OF LODGMENT WITH PROOF OF SERVICE | 1.80<br>125.00/hr | 225.00 |
| 1/30/2015 | BJY | Preparation of pleadings<br>AT THE REQUEST OF THE US BANKRUPTCY COURT REVISE PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW BECAUSE OF THE CASE TRANSFER TO JUDGE V. ZURZOLO. | 0.60<br>495.00/hr | 297.00 |
| 2/6/2015 | BJY | Telephone call with opposing Attorn<br>TELEPHONE CALL TO AND FROM CINDY GUNADI REGARDING THE CHANGE IN HEARING DATE AND THE STATUS CONFERENCE WHICH IS OFF CALENDAR. | 0.20<br>495.00/hr | 99.00 |
| 2/20/2015 | BJY | Review<br>REVIEW AND ANALYZE FRANK MAYOR'S OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT. | 2.30<br>495.00/hr | 1,138.50 |
| 2/24/2015 | BJY | Preparation of pleadings<br>PREPARE AND DRAFT REPLY BRIEF REGARDING  OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT | 4.60<br>495.00/hr | 2,277.00 |
| 3/12/2015 | BJY | Court Appearance for Hearing<br>TRAVEL TO AND FROM MOTION FOR SUMMARY JUDGMENT HEARING; PREPARE AND DRAFT EMAIL TO CLIENT WITH | 3.40<br>495.00/hr | 1,683.00 |

EDWARD M. WOLKOWITZ                                                                    Page    11

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|

UPDATE ON HEARING

| 4/10/2015 BJY | Review | 1.80 | 891.00 |
|---|---|---|---|

REVIEW AND ANALYZE FRANK MAYOR'S DEMAND LETTER
REGARDING  ESTATE PROPERTY AND PICK UP; FORWARD
LETTER TO TRUSTEE; PREPARE AND DRAFT MEET AND
CONFER LETTER TO CINDY GUNADI REGARDING ESTATE
PROPERTY PICK UP AND TURN OVER OF THE ESTATE'S
10,500.00.                                                            495.00/hr

| 4/13/2015 BJY | Preparation of pleadings | 3.80 | 1,881.00 |
|---|---|---|---|

PREPARE AND DRAFT DECLARATION EXPERT DAVID
KIMBROUGH REGARDING  THE ESTATE'S DVD VALUATION;
CONDUCT LEGAL RESEARCH REGARDING DIMINUTION OF
VALUE OF DVDS AND EQUIPMENT                                            495.00/hr

| BJY | Research | 6.80 | 3,366.00 |
|---|---|---|---|

PERFORM LEGAL RESEARCH AND ANALYSIS ON TITLE 11 USC
SECTION 542 REGARDING THE COURT AUTHORITY TO VALUE
NON-MONETARY PROPERTY OF THE DEBTOR'S BANKRUPTCY
ESTATE.  DRAFT NOTICE OF MOTION TO VALUE
NON-MONETARY PROPERTY OF THE ESTATE.                                  495.00/hr

| 4/14/2015 BJY | Review | 2.80 | 1,386.00 |
|---|---|---|---|

REVIEW AND ANALYZE LETTER FROM CINDY GUNADI REFUSING
TO ALLOW LIQUIDATOR ACCESS TO THE DVDS; PREPARE AND
DRAFT EMAIL TO TRUSTEE REGARDING  SAME; PREPARE AND
DRAFT RESPONSIVE LETTER TO GUNADI REGARDING
CONTEMPT OF COURT                                                     495.00/hr

| BJY | Draft | 4.75 | 2,351.25 |
|---|---|---|---|

BEGIN DRAFT MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF APPLICATION FOR CONTEMPT SANCTIONS FOR
MAYOR AND GUNADI'S POSSESSION AND REFUSAL TO
TURNOVER ESTATE PROPERTY.                                             495.00/hr

| 5/12/2015 BJY | Draft | 4.80 | 2,376.00 |
|---|---|---|---|

CONTINUE DRAFTING APPLICATION FOR CONTEMPT
SANCTIONS FOR MAYOR AND GUNADI VIOLATION OF THE
AUTOMATIC STAY IN FAILING TO TURNOVER PROPERTY THAT
WAS ADJUDGED TO BELONG TO THE ESTATE.  PERFORM
ADDITIONAL LEGAL RESEARCH AND ANALYSIS ON THE
STANDARDS FOR FINDING A PARTY IN CIVIL CONTEMPT UNDER                 495.00/hr

EDWARD M. WOLKOWITZ                                                                                          Page    12

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
|  |  | SECTION 105 OF THE BANKRUPTCY CODE. |  |  |
|  |  |  |  |  |
| 5/13/2015 | BJY | Draft | 3.60 | 1,782.00 |
|  |  | REVISE AND FINALIZE APPLICATION FOR CONTEMPT SANCTIONS FOR MAYOR AND GUNADI VIOLATION OF THE AUTOMATIC STAY IN FAILING TO TURNOVER PROPERTY THAT WAS ADJUDGED TO BELONG TO THE ESTATE.  PERFORM ADDITIONAL LEGAL RESEARCH AND ANALYSIS ON THE STANDARDS FOR FINDING A PARTY IN CIVIL CONTEMPT UNDER SECTION 105 OF THE BANKRUPTCY CODE.  DRAFT DECLARATION IN SUPPORT OF APPLICATION FOR CONTEMPT. PREPARE EXHIBITS. | 495.00/hr |  |

| | | **For professional services rendered** | **202.47** | **$98,413.75** |
|---|---|---|---|---|

Additional Charges :

|  |  |  | Qty/Price |  |
|---|---|---|---|---|
| 5/1/2014 | BJY | Copying cost | 156 | 23.40 |
|  |  | Copying cost | 0.15 |  |
|  |  |  |  |  |
|  | BJY | Postage | 1 | 34.36 |
|  |  | Postage (1) and Certified Mail Costs with Return Receipt Requested (4) | 34.36 |  |
|  |  |  |  |  |
|  | BJY | Attorney Service | 1 | 8.50 |
|  |  | Pacer charges | 8.50 |  |
|  |  |  |  |  |
| 5/9/2014 | BJY | Postage | 1 | 2.24 |
|  |  | Postage | 2.24 |  |
|  |  |  |  |  |
|  | BJY | Copying cost | 36 | 5.40 |
|  |  | Copying cost | 0.15 |  |
|  |  |  |  |  |
| 6/19/2014 | BJY | Postage | 3 | 1.98 |
|  |  | Postage | 0.66 |  |
|  |  |  |  |  |
| 7/25/2014 | BJY | Postage | 2 | 2.22 |
|  |  | Postage | 1.11 |  |

EDWARD M. WOLKOWITZ

Page    13

|  |  | Qty/Price | Amount |
|---|---|---|---|
| 9/8/2014  BJY | Postage<br>Postage | 4<br>6.69 | 26.76 |
| 9/24/2014  BJY | Copying cost<br>Copying cost | 400<br>0.20 | 80.00 |
| 10/15/2014  BJY | Deposition Costs<br>Deposition Costs for Frank Mayor (Personal Court Reporters, Inc) Inv.<br>F12619 | 1<br>1,111.98 | 1,111.98 |
| 10/27/2014  BJY | Postage<br>Postage | 1<br>1.80 | 1.80 |
| 1/13/2015  BJY | Postage<br>Postage to serve Chamber's Copy and Defendant's Counsel MSJ | 1<br>32.85 | 32.85 |

**Total additional charges**                                               $1,331.49

**Total amount of this bill**                                              $99,745.24

Balance due                                                               $99,745.24

Client funds transactions

| | | |
|---|---|---|
| **Previous balance of Default** | | **$0.00** |
| 4/23/2015 Deposit of Accounts Receivable Money Recovered against Defendants Following Summary Judgment | | $10,500.00 |
| 4/30/2015 Withdrawal from account - Transfer Funds Recovered pursuant to Summary Judgment to Chapter 7 Trustee | | ($10,500.00) |
| **New balance of Default** | | **$0.00** |

| In re: | | CHAPTER: **7** |
|---|---|---|
| **Wolkowitz v. Mayor, et al.** | | |
| | Debtor(s). | CASE NUMBER: **2:11-bk-40813-VZ** |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.   My business address is:  **11111 Santa Monica Boulevard, Suite 100, Los Angeles, CA 90025**

A true and correct copy of the foregoing document entitled (*specify*):   CHAPTER 7 TRUSTEE EDWARD M. WOLKOWITZ'S APPLICATION FOR ORDER TO SHOW CAUSE WHY FRANK A. MAYOR AND CINDY GUNADI SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND ORDER THEM TO PAY COMPENSATORY DAMAGES IN THE FORM OF ATTORNEY'S FEES AND COSTS ASSOCIATED WITH PREVAILING IN THE TURNOVER PROCEEDINGS; DECLARATION OF B. YOURIST AND EXHIBITS IN SUPPORT THEREO will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>5/15/2015</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**United States Trustee (LA)**       ustpregion16.la.ecf@usdoj.gov
**Bradley J Yourist**       byourist@gmail.com, djy@youristlaw.com;atroy@youristlaw.com

☐ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On <u>5/15/2015</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Judge's Copy**
Chambers of the Honorable Vincent P. Zurzolo
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

**Attorney for Frank Mayor and Cindy Gunadi**
Cindy Theresia Gunadi, Esq.
424 Bamboo Lane
Los Angeles, California 90012

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>5/15/2015</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.   Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Via Email to Counsel for Frank Mayor and Cindy Theresia Gunadi:   csuriyani@yahoo.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 15, 2015 | Adam Troy | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.   It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June   2012                                                                                                                  **9013-3.1.PROOF.SERVICE**